IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-02457-CNS-NRN

$CO_2$ COMMITTEE, INC.,

    Plaintiff,

v.

MONTEZUMA COUNTY,
MONTEZUMA COUNTY BOARD OF COUNTY
COMMISSIONERS, and
MONTEZUMA COUNTY ASSESSOR

    Defendants.

# ORDER

Before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF No. 17. The Court GRANTS the motion for the following reasons.

## I.    FACTS

The McElmo Dome Unit (the Unit) is a large deposit of carbon dioxide located in Montezuma County. ECF No. 17 at 3. Plaintiff $CO_2$ Committee, Inc. (the Committee) is challenging retroactive tax assessments imposed by Montezuma County (the County) against the Unit's nonoperating fractional interest owners. ECF No. 1 (Complaint).

Oil and gas estates are often developed as a "unit," where multiple working interests extract resources from a single geological reservoir to promote efficiency. *Co.*

1

*Prop. Tax Adm'r v. CO$_2$ Comm., Inc.*, 527 P.3d 371, 373 (Colo. 2023) (citation omitted). Although multiple owners may hold interests in a unit, there is only one unit operator managing day-to-day operations. *Id.* (citation omitted). Kinder Morgan CO$_2$ Company, LLP (Kinder Morgan) serves as the unit operator for the Unit.[1] ECF No. 17 at 3.

The Committee is a Colorado nonprofit corporation acting on behalf of its members, who are non-operating fractional interest owners in the Unit. These owners include the Small Share Working Interest Owners (SSWIOs). ECF No. 17 at 3. Mineral estate owners lease their right to extract oil and gas by creating a working interest where the lessee has the right to enter the land and extract minerals; fractional interest owners, like the SSWIOs, own a portion of the Unit's total working interest. *Co. Prop. Tax Adm'r,* 527 P.3d at 373. Non-operating fractional interest owners share ownership interests with other entities but do not operate the reservoir. *Id.* The Committee's members include fractional interest owners who own a collective 11.22% of the Unit; the SSWIOs' interest in the Unit is approximately 6%. ECF No. 1 at ¶ 1. Non-operating fractional interest owners may either take their proportionate share of the extracted minerals to sell themselves or rely on another party to market the minerals while taking a proportionate share of the proceeds. *Id.*

Once a year, a unit operator prepares and files an "Annual Statement" with the county tax assessor. *See generally Co. Prop. Tax Adm'r*, 527 P.3d at 373–74; Colo. Rev.

---

[1] An operator is "any person responsible for the day-to-day operation of a well by reason of contract, lease, or operating agreement." *Co. Prop. Tax Adm'r*, 527 P.3d at 373 (Colo. 2023).

Stat. §§ 39-7-101(1)(d), 102(2), 106(2) (2022). In the Annual Statement, the unit operator calculates the unit's income and deducts certain operation costs. *Kinder Morgan CO$_2$ Co., L.P. v. Montezuma Cty. Board. Of Comm'r.,* 396 P.3d 657, 661 (Colo. 2017). The County Assessor uses the Annual Statement to valuate the unit, calculate property taxes, and collect appropriate taxes from the unit's interest owners. *Id.* at 661–62. After receiving the Annual Statement, the County may conduct retroactive assessments against the unit to establish the value of the property at a given point in time. *See Co. Prop. Tax Adm'r*, 527 P.3d at 377. Unit operators are responsible for collecting the unit's property taxes from their non-operating fractional interest owners and remitting the total amount to the county treasurer. *Id.* at 374.

Here, the County conducted an audit of Kinder Morgan's Annual Statement for the 2008 tax year and determined that Kinder Morgan had improperly deducted operation costs relating to the operation of a pipeline within the Unit. ECF No. 17 at 5; ECF No. 1, ¶ 17. As a result of these assessments, the County retroactively increased the Unit's valuation by $57 million, increasing the overall tax liability of the Unit by over $2 million. ECF No. 17 at 5. Accordingly, Kinder Morgan allocated the retroactive tax assessment to all non-operating fractional interest owners, including the SSWIOs. ECF No. 1, ¶ 25. The SSWIOs were responsible for paying approximately $500,000 of the $2 million retroactive tax liability. *Id.* Plaintiff alleges that the SSWIOs have no relation to the pipeline operations that caused the increased valuation, and so should not be responsible for the additional tax burden. ECF No. 1, ¶ 27.

## II. PROCEDURAL HISTORY

For 13 years, Kinder Morgan and Plaintiff have challenged the County's retroactive assessments through numerous legal proceedings. ECF No. 17 at 2–3. Despite Kinder Morgan's involvement in previous lawsuits, Plaintiff proceeds alone in the present lawsuit, partially based on the advice of Kinder Morgan.[2]

In 2011, after paying the additional taxes owed to the County as a result of the County's 2009 retroactive assessment, Kinder Morgan petitioned the Board of County Commissioners to abate or refund the assessment. ECF No. 1 at ¶ 28. The Commissioner denied Kinder Morgan's petition. *Id.* Kinder Morgan then appealed the Commissioner's decision to the Board of Assessment Appeals. *Id.,* ¶ 29. The Board of Assessment Appeals affirmed the decision, concluding that the Montezuma County Assessor had authority to issue the retroactive assessment. *Id.*

Kinder Morgan appealed this denial to the Colorado Court of Appeals. *Id.,* ¶ 31. In 2015, the Colorado Court of Appeals affirmed the Board of Assessment Appeals' decision, holding that the Board of Assessment Appeals correctly denied Kinder Morgan's appeal of the Commissioner's decision. *Kinder Morgan $CO_2$ Co., L.P. v. Montezuma Cnty. Board Of Comm'r,* 399 P.3d 657 (Colo. App. 2017).

Kinder Morgan appealed the Colorado Court of Appeals decision to the Colorado Supreme Court. In 2016, the Colorado Supreme Court granted certiorari to address

---

[2] Defendants do not challenge the Committee's standing to bring this action and the Committee alleges that it is authorized to act on behalf of the Unit's SSWIOs. *See* ECF No. 20; ECF No. 17. Courts may address standing *sua sponte. United States v. Colorado Supreme* Court, 87 F.3d 1161, 1166 (10th Cir. 1996). However, because the Court does not have subject matter jurisdiction for other reasons, it does not need to conduct a standing analysis here.

whether the Colorado Court of Appeals properly concluded that the legislature amended Colo. Rev. Stat. § 39-10-107(1) (2015) to permit retroactive assessment of property taxes on the value of oil and gas leaseholds omitted due to the underreporting of the selling price of oil and gas or the quantity sold. *Kinder Morgan CO2 Co., LP. V. Montezuma Cnty. Board of Comm'r.*, 26 WL 768449 (Colo. 2016). In 2017, the Colorado Supreme Court affirmed the Colorado Court of Appeals decision because (1) the statutory scheme authorized the Montezuma County Assessor's tax assessment; and (2) the Board of Assessment Appeals did not err in concluding that Kinder Morgan had underreported the selling price because it was not entitled to deduct certain transportation costs. *Kinder Morgan CO$_2$ Co., L.P.,* 396 P.3d at 660.

In November 2017, after these unsuccessful appeals, Kinder Morgan encouraged Plaintiff to independently challenge the retroactive assessment. ECF No. 1, ¶ 34. Plaintiff describes Kinder Morgan's suggestion as "the first notice [it] . . . received with respect to the retroactive assessment." *Id.*

The CO$_2$ Committee requested that the Assistant Solicitor General issue a ruling establishing that the retroactive assessments did not apply to the SSWIOs. *Id*. This request was unsuccessful. *Id.* In January 2018, the Committee challenged the assessments in front of the County Assessor. *Id.,* ¶ 36. In April 2018, the County Assessor upheld the retroactive assessment. *Id.,* ¶ 39. In May 2018, the Committee petitioned for an appeal to the Board of Equalization. *Id.,* ¶ 39. This petition was denied because the Committee was not the designated taxpayer for the Unit. *Id.,* ¶ 40.

In October 2018, the Committee filed a complaint in the United States District Court for the District of Colorado. *CO$_2$ Committee, Inc. v. Montezuma Cnty, et al.,* 18-cv-02502 (D. Colo. 2018) (unpublished). The Committee quickly moved to dismiss the federal complaint while it exhausted its opportunity for a "plain, speedy and efficient remedy" in state court. ECF No. 1, ¶¶ 45–46.

In November 2018, the Committee filed a complaint in the Motezuma County District Court. *Id.,* ¶ 46. The district court dismissed the case for lack of standing. *Id.,* ¶ 48. The Committee appealed to the Colorado Court of Appeals, which reversed the district court's order, holding that the Committee had standing. *Id.*, ¶ 49.

The County appealed this decision to the Colorado Supreme Court, which reversed the Colorado Court of Appeals decision and held that the Committee did not have standing. *See Co. Prop. Tax Adm'r*, 527 P.3d at 375. The Colorado Supreme Court concluded that Colorado law creates a unique representative system in which a unit operator is the sole entity with standing to protest a retroactive tax assessment on the operator's unit. *Id.* at 373 (citing Colo. Rev. Stat. § 39-7-101). The Colorado Supreme Court held that the SSWIOs are not "taxpayer[s] as contemplated by the pertinent statutes," but rather that Kinder Morgan is the taxpayer. *Id.* at 380. Therefore, "[b]ecause [the CO$_2$ Committee] lacked a legally protected interest, it lacked standing to challenge Montezuma County's retroactive assessment and increased property taxes." *Id.*

Following the Colorado Supreme Court's decision, Plaintiff filed a complaint with this Court alleging that the County violated the SSWIOs' due process rights under the Fifth and Fourteenth Amendments. ECF No. 1. The County moved to dismiss the

6

Complaint, alleging that this Court lacks subject matter jurisdiction under the Tax Injunction Act (TIA) because the act "is a broad limitation on federal court inference with state collection of taxes." ECF No. 17. Additionally, the County argued that the Committee's claims are barred by the comity doctrine and res judicata. *Id.* at 13–14.

### III.   LEGAL STANDARD

To survive a Rule of Civil Procedure 12(b)(1) motion to dismiss, a plaintiff must demonstrate that the court has subject matter jurisdiction." *Audubon of Kan., v. U.S. Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023). "A Rule 12(b)(1) motion to dismiss only requires the court to determine whether it has authority to adjudicate the matter." *Kenney v. Helix TCS, Inc.,* 939 F.3d 1106, 1108 (10th Cir. 2019). "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (internal quotations omitted).

A defendant may challenge subject matter jurisdiction under Federal Rule 12(b)(1) by the "facial[] attack [of] the complaint's allegations." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1000, 1002 (10th Cir. 1995). "Where, as here, a Rule 12(b)(1) motion constitutes a facial attack on the allegations of subject matter jurisdiction, the court presumes all the allegations contained in the complaint to be true." *Bernard v. Vermont*, No. 23-cv-00241-DDD-KAS, 2024 WL 760005, at 1 (D. Colo. Feb. 2, 2024).

### IV.   ANALYSIS

Under the Tax Injunction Act, federal courts are barred from enjoining, suspending, or restraining the assessment or collection of state taxes. 28 U.S.C. § 1341; *Landowners*

*United Advocacy Foundation, Inc. v. Cordova,* 822 F. App'x. 797, 799 (10th Cir. 2020). However, an exception exists: the jurisdictional bar does not apply if there is no "plain, speedy and efficient remedy [that] may be had in the courts of such state." *Id*. This exception is construed narrowly. *Brooks v. Nance*, 801 F.2d 1237, 1240 (10th Cir. 1986).

The TIA "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981). Federal declaratory relief must be used narrowly and sparingly to avoid throwing the state tax administration "into disarray." *California v. Grace Brethren Church*, 457 U.S. 393, 410 (1982).

This Court considers Plaintiff's four claims to establish whether it seeks to enjoin, suspend, or restrain the assessment, levy, or collection of any state tax.

First, Plaintiff alleges that the County deprived the SSWIOs of their due process rights "by failing to give them [the SSWIOs] notice of the audit and retroactive assessment of taxes" and by refusing to consider the SSWIOs' timely objections and petition for reimbursement of illegally collected taxes. ECF No. 1, ¶ 54. Plaintiff argues that the County "owe[s] all taxes, interest, attorney fee damages, related damages and punitive damages imposed on the Committee members" arising from the retroactive assessments. *Id.*, ¶ 55.

Second, Plaintiff seeks declaratory judgment recognizing the SSWIOs as taxpayers and declaring that their due process rights were violated. *Id.*, ¶ 56. The Committee also requests an injunction that requires the Assessor to (1) treat the SSWIOs as taxpayers; (2) prohibit retroactive assessments against the SSWIOs; (3) give notice of

any retroactive assessment to the SSWIOs; and (4) adjust the next taxable returns of the SSWIOs. *Id.*

Third, Plaintiff claims misrepresentation and promissory estoppel, alleging that "Defendants and their attorney, by moving to dismiss [the SSWIOs'] complaint in federal court based on 28 U.S.C. § 1341, misrepresented the existence of a remedy in state court since their motion to dismiss the complaint filed in state court was based on no standing." *Id.*, ¶ 60.

Fourth, Plaintiff argues that the SSWIOs should be allowed a higher selling price in the Annual Statement submitted by the Unit Operator to the County. *Id.*, ¶¶ 70–72. Plaintiff argues that, based on current methods of calculation, the SSWIOs are entitled to damages equaling the amount of the annual assessments that the County made against the SSWIOs from 2008 to the present, plus interest. *Id.*

The plaintiff's first, second, and fourth claims seek to enjoin, suspend or restrain the assessment, levy or collection of Colorado state taxes. Enjoining the County's retroactive assessment "would deny [the State] the use of significant funds." *Hill v. Kemp*, 478 F.3d 1236, 1247 (10th Cir. 2007). Indeed, the retroactive assessment increased taxes by $2 million, placing responsibility for approximately half a million dollars on the SSWIOs. ECF No.1, ¶ 27. The relief sought here would implicate the exact federalism issues that the TIA was designed to ameliorate, as emphasized by the dependency of state budgets on local tax revenues. Therefore, this court is barred from hearing the first, second, and fourth claim unless Plaintiff proves that an exception to the TIA's bar applies.

An exception to the jurisdictional bar on federal courts enjoining, suspending, or restraining the assessment or collection of state taxes exists when federal courts determine that the state courts did not provide a "plain, speedy, and efficient remedy." *Landowners United Advoc. Found., Inc.*, 822 F. App'x. at 800 (quoting *Hill*, 478 F.3d at 1246). If the state court provides a plain, speedy, and efficient remedy, the claim must be dismissed from federal court for lack of subject matter jurisdiction. *Id*. The United States Supreme Court concluded that a "plain, speedy, and efficient" remedy exists if, under state law, there is a way for a taxpayer to present their constitutional claims while preserving the right to challenge the amount of tax due. *Id.*

Plaintiff failed to allege insufficient remedies in state court, so the exception to the jurisdictional bar does not apply here. Kinder Morgan and Plaintiff brought challenges to the County's retroactive assessment in state court, which establishes that the TIA's exception is not satisfied and so federal jurisdiction is barred. Kinder Morgan challenged the retroactive assessment directly with the County before appealing up to the Colorado Supreme Court. ECF No. 1, ¶ 28, 31.[3] After Kinder Morgan's challenges failed, Plaintiff challenged the retroactive assessments before appealing up to the Colorado Supreme Court. *Id.,* ¶¶ 35–51.

---

[3] Kinder Morgan was presented with opportunities to raise constitutional issues on behalf of its SSWIOs. *See Kinder Morgan CO$_2$ Co., L.P.*, 399 P.3d at 741. Kinder Morgan's failure to further represent the interests of the Unit's SSWIOs does not negate the satisfaction of requirements under the TIA. *Liebhardt v. Dep't of Revenue*, 229 P.2d 655, 657 (Colo. 1951) ("The statute affords the taxpayer a plain, speedy and adequate remedy and full opportunity to be heard as to the quantum of the tax and the alleged irregularities leading up to the fixation of tax liability. Failure to . . . exhaust the statutory remedies afforded the taxpayer, constitutes a waiver of such objections which cannot now be asserted.").

The challenges brought by Kinder Morgan and Plaintiff to the retroactive assessment meets the requirement that the remedy provide an opportunity for a "full hearing and judicial determination" of Plaintiff's claims. *See Cities Serv. Gas Co. v. Okla. Tax Comm'n,* 656 F.2d 584, 587 (10th Cir. 1981) (concluding that procedural requirements were satisfied when the state gave taxpayers the ability to challenge taxes with the state administration in addition to the ability to challenge taxes within state courts); *see Rosewell*, 450 U.S. at 514 (determining procedural requirements were met through the opportunity for a "'full hearing and judicial determination," during which constitutional issues can be raised, appeal to higher state courts is authorized, and review is ultimately available in the Supreme Court).

Although Plaintiff maintains that its interests were not represented by Kinder Morgan, the Colorado Supreme Court determined that a unit operator had the power to raise these claims and that their failure to do so does not negate satisfaction of the procedural requirements. *See* ECF No. 1; ECF No. 18; *Co. Prop. Tax Adm'r*, 527 P.3d at 379 (stating that "the unit operator represents fractional interest owners at *every* stage of the property tax assessment process"); *Liebhardt v. Dep't of Revenue*, 229 P.2d 655, 657 (Colo. 1951) ("The statute affords the taxpayer a plain, speedy, and adequate remedy and full opportunity to be heard . . . . Failure to . . . exhaust the statutory remedies afforded the taxpayer, constitutes a waiver of such objections which cannot now be asserted.").

Under the TIA, this Court is barred from enjoining, suspending or restraining the assessment, levy, or collection of any tax under state law where a plain, speedy and

efficient remedy may be had in the courts of such state. Plaintiff has failed to establish that a plain, speedy, and efficient remedy is impossible in state court. Therefore, this Court does not have subject matter jurisdiction and an analysis under the comity doctrine and res judicata is not necessary.

Plaintiff's third claim is invalid for two reasons: (1) Plaintiff makes no reference to legal authority when establishing that the defense's initial motion to dismiss constitutes misrepresentation or grounds for promissory estoppel; and (2) when a district court dismisses all federal claims, "the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998); *see also* 28 U.S.C. § 1367(c)(3). Because this Court dismisses the relevant federal claims, the Court also declines to exercise supplemental jurisdiction over the state law claims.

## V. CONCLUSION

Consistent with the foregoing analysis, Defendants' Motion to Dismiss is GRANTED. Each of Plaintiff's claims are dismissed without prejudice. *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2019) (dismissal for lack of subject matter jurisdiction is generally without prejudice).

DATED this 24th day of July 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge